**KINAMAN ANIMAL SHELTER, INC., Petitioner,**

v.

**DEPARTMENT OF AGRICULTURE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 9, 1996.
Decided March 13, 1996.

matter of Congressional policy objectives and often has little to do with actual differences be-

tween items of income.

Gerald J. Villella, for Petitioner.

Dwight–Jared Smith, for Respondent.

Before COLINS, President Judge, FLAHERTY, J., and RODGERS, Senior Judge.

RODGERS, Senior Judge.

Kinaman Animal Shelter, Inc. (KAS) petitions for review of an order issued by the Secretary of the Department of Agriculture (Department) that canceled a $50,000.00 grant agreement that provided for KAS' operation of a dog control facility for a period of ten years. We affirm.

On April 4, 1991, KAS and the Department entered into a grant agreement. In exchange for the grant of $50,000.00 from the Department, KAS agreed to operate a dog control[1] facility. Under the grant agreement, KAS assumed the obligation to abide by the applicable provisions of the Dog Law[2] and the regulations at 7 Pa.Code §§ 23.1—23.13.

The Department did not deliver any dogs to the facility until May 7, 1992, because prior to that point construction had been proceeding so that the facility could accommodate the receipt of the animals. From May 7, 1992 to November 1, 1993, Department enforcement officers delivered thirty-nine dogs to KAS, but after November, 1993, KAS refused to accept additional dogs from the Department, claiming that the facility was filled to capacity.

On several occasions in late 1993, the Department informed KAS that it had received numerous complaints about the facility and that a compliance review would be conducted. The Department requested a breakdown of the number of dogs received by KAS and the number of dogs adopted out. The Department also emphasized that under the agreement KAS was required to create a flow of dogs through its facility.

On January 6, 1994, the Department conducted an inspection of KAS' facility and records.[3] The inspection revealed that forty dogs were present at KAS. KAS' records provided that of the thirty-nine dogs deposited by the Department at KAS between May 7, 1992 and November 1, 1993, none had been humanely euthanized, transferred to new owners or returned to original owners. Another inspection ensued on February 13, 1994, by the enforcement officer who had deposited most of the dogs with KAS. Although the records were unavailable for inspection, the enforcement officer recognized most of the dogs present, finding them to be from the group of thirty-nine dogs delivered by the Department.

By letter dated March 15, 1994, the Department warned KAS of the imminent termination of the grant agreement with a demand for repayment of the grant monies if KAS did not begin dog control activities by April 20, 1994. As a result of KAS' failure to establish a significant flow of dogs through its facility, the Department by letter dated July 8, 1994 issued its notice canceling the grant and demanding that KAS repay $49,-805.00 of the original grant amount.[4]

KAS appealed the Department's action canceling the grant. In lieu of a hearing the parties submitted an extensive stipulation of facts. Based on the stipulation the hearing officer concluded that KAS' violations of Pa.Code §§ 23.5[5] and

---

1. Section 102 of the Dog Law, Act of December 7, 1982, P.L. 784, *as amended*, 3 P.S. § 459–102, defines dog control as:

   The apprehending, holding and disposing of stray or unwanted dogs or activities that reduce the number of dog related problems. Dog control activities may be performed by agents of incorporated humane organizations, police, State dog wardens or agents of animal control organizations such as municipal dog control officers.

2. 3 P.S. §§ 459–101—459–1205. More particularly, Section 1002 of the Dog Law, 3 P.S. § 459–1002, provides that the Department may award grants to incorporated humane organizations to establish and maintain dog control facilities to complement the Dog Law enforcement program.

3. Pursuant to 7 Pa.Code § 25.2 a "Form AD-LEB–4, Dog Disposition Record" must be completed by an enforcement officer at the time a dog is deposited at a facility. The form is kept by the facility to be completed by the facility personnel, indicating the disposition of that particular dog.

4. KAS was entitled to receive a payment of $5.00 per dog for each of the thirty-nine dogs delivered to KAS by the Department.

5. 7 Pa.Code § 23.5 states in pertinent part:

   Counties and humane organizations receiving funds for new dog shelters or dog shelter expansion and repair maintenance shall continue to operate these facilities for the purposes the funds were obtained for a period of

23.6[6] constituted material breaches of the grant agreement. Moreover, the hearing officer determined that KAS' failure to accept stray dogs from the Department subsequent to November, 1993, and its failure to dispose of dogs delivered into its custody materially breached the grant agreement. Thus, the hearing officer concluded that, because the Department did not receive the performance from KAS that it expected in exchange for the grant award, the Department was entitled to the return of the grant monies minus the five dollar per dog fee.

■ Upon submission of the hearing officer's findings and conclusions to the Secretary of the Department, the revocation of KAS' grant was officially adjudicated. KAS now appeals to this Court.[7] The issues raised by KAS are (1) whether the adjudication to revoke the grant because of a lack of turnover of animals in the dog control facility is based on substantial evidence; and (2) whether alternatives to the forfeiture of the grant monies could have been utilized by the Department.

■ Although KAS raises its first issue in the context of a substantial evidence question, this case is one of first impression. Specifically, KAS contends that the dispute concerns the ambiguity of the term "dispose of" as it relates to what a dog facility is required to do. The Department responds that pursuant to the definition of dog control found at 3 P.S. § 459–102 (*See* footnote no. 1), a dog control facility is required to dispose of stray dogs that it receives and that "[d]isposal may be accomplished by humane euthanasia, adoption, reuniting the stray dog with its owner or any other means." (Department's Brief, p. 9.)

KAS states in its brief that it agrees with the Department's construction of the term "dispose of," but contends that neither the law nor the agreement identifies a preference for the use of one method of disposal over

another. KAS also asserts that it has disposed of stray animals, but not at the pace that would satisfy the Department.

The problem with KAS' argument is that it relies on facts that are not of record. The hearing officer found that KAS had not disposed of any of the thirty-nine dogs delivered to it by enforcement officers during the four year period from the effective date of the grant to its termination and that KAS had not accepted additional dogs from November, 1993, to the time that the agreement was cancelled. Therefore, KAS' argument that it should be allowed to continue to dispose of dogs at its own pace flies in the face of evidence presented. In fact, the stipulation signed by the parties indicates that of the thirty-nine dogs delivered to the facility, none had been disposed of. Thus, substantial evidence supports the findings of fact and pursuant to our scope of review we are bound by those findings.

■ With regard to the second issue raised, KAS suggests that the Department should allow the present situation to continue for an unspecified period of time to allow the facility to comply with the disposal requirement in its own way, i.e., to allow KAS to "avoid exterminating healthy domestic animals in favor of its somewhat less efficient adoption program." (KAS' brief, p. 11.) KAS cites no support for this request and at the same time recognizes its obligation under the grant to dispose of the animals it now cares for to make room for new stray dogs that enforcement officers bring to the facility. Despite its recognition of its failure to comply, KAS asks this Court to overturn the decision below. This we cannot do.

As set forth in 7 Pa.Code § 23.12, "[t]he Department has the right to make a claim for and receive from the county or humane society organization, or both, funds not expended

---

not less than 10 years, or the Department may recapture the grant funds.

**6.**  7 Pa.Code § 23.6 states in pertinent part:
  A grant recipient shall accept and cooperate in the detention of a dog apprehended running at large, ... and dispose of unlicensed stray dogs apprehended and delivered to the agency by an enforcement officer.

**7.**  Our scope of review is limited to determining whether an error of law was committed, constitutional rights were violated, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

in accordance with the act, this chapter, or a grant agreement." Substantial evidence in the record shows that the funds granted to KAS were not expended in this manner. Accordingly, the decision by the Secretary is affirmed.

### ORDER

NOW, March 13, 1996, the order of the Secretary of the Department of Agriculture in the above matter is affirmed.